# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ELVIN AVILES MENDEZ | : | CIVIL ACTION |
|     Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| KILOLO KIJAKAZI, Comm. of | : | NO. 20-cv-04892-RAL |
| Social Security, | : | |
|     Defendant. | : | |

**RICHARD A. LLORET**
**U.S. MAGISTRATE JUDGE**                                          **November 13, 2023**

## MEMORANDUM OPINION

The Commissioner of Social Security, through the decision of an Administrative Law Judge ("ALJ"), denied Mr. Mendez' application for disability insurance benefits ("DIB"). Because I find no error, I will affirm the ALJ's decision.

## PROCEDURAL HISTORY

On June 27, 2018, Plaintiff filed an application for Disability Insurance Benefits (DIB), and Supplemental Security Income (SSI) pursuant to Titles II and XVI of the Social Security Act, alleging disability beginning April 26, 2016, due to impairments including obesity, seizure disorder, status post right hip fracture and fixation, and status post fracture of both legs with fixation. R. 15.[1] The state agency denied the application on November 30, 2018, and Mr. Mendez sought review before an Administrative Law Judge. R. 99, 109. A hearing was held on July 17, 2019. R. 31-61. The ALJ heard testimony from Mr. Mendez, who was represented by an attorney, and a vocational expert. *Id*. The ALJ issued an unfavorable decision on September 16, 2019. R. 8-26.

---

[1] Documents in the Administrative Record are cited as "R. ___." The page number cited is that inserted in the lower right corner by the Social Security Administration.

Mr. Mendez timely filed a request for review in this court on October 5, 2020. ECF Doc. No. 1.

## FACTUAL BACKGROUND

### A. The Claimant's Background

Mr. Mendez was 39 years old on the date of his application for benefits, making him a "younger person" under the regulations. R. 171. He left school after the tenth grade and can communicate in English. R. 40. Mr. Mendez worked as a forklift operator and a taxi driver, and at the time of the hearing, was working part-time doing deliveries. R. 41-42.

### B. The ALJ's Decision

The ALJ found that Mr. Mendez was not eligible for DIB because he has not been under a disability since the alleged onset date, as defined by the Social Security Act. R. 26. In reaching this decision, the ALJ made the following findings of fact and conclusions of law pursuant to Social Security's five-step sequential evaluation process.[2]

At step one, the ALJ concluded that Mr. Mendez had not engaged in substantial gainful activity ("SGA") since April 26, 2016, the alleged onset date. R. 12. At step two, the ALJ determined that Mr. Mendez had the following severe impairments: obesity, seizure disorder, status post right hip fracture and fixation, and status post fracture of

---

[2] An ALJ evaluates each case using a sequential process until a finding of "disabled" or "not disabled" is reached. The sequence requires an ALJ to assess whether a claimant: (1) is engaging in substantial gainful activity; (2) has a severe "medically determinable" physical or mental impairment or combination of impairments; (3) has an impairment or combination of impairments that meet or equal the criteria listed in the social security regulations and mandate a finding of disability; (4) has the residual functional capacity to perform the requirements of her past relevant work, if any; and (5) is able to perform any other work in the national economy, taking into consideration her residual functional capacity, age, education, and work experience. *See* 20 C.F.R. §§ 404.1520(a)(4)(i)–(v). The claimant bears the burden of proof through step four. The burden shifts to the Commissioner at step five. *Ramirez v. Barnhart*, 372 F.3d 546, 555 (3d Cir. 2004).

both legs with fixation. R. 15. He found that these impairments significantly limit the ability to perform basic work activities as required by SSR 85-28. *Id*. Mr. Mendez' medically determinable mental impairments of anxiety disorder and depressive disorder, considered singly and in combination, do not, according to the ALJ's step two decision, cause more than minimal limitation in Mr. Mendez' ability to perform basic mental work activities. *Id*. He therefore found these mental impairments to be non-severe. *Id*.

At step three, the ALJ compared Mr. Mendez' impediments to those contained in the Social Security Listing of Impairments ("Listing").[3] R. 16. Specifically, the ALJ compared Mr. Mendez' seizure disorder to Section 11.02 of the Listings, and his status post right hip fracture and fixation and status post fracture of both legs with fixation to Section 1.02 of the Listings. *Id*. The ALJ noted with regard to obesity, that although Mr. Mendez is 5'11" tall and his weight fluctuated between a high of approximately 280 and a low of 262 pounds, resulting in a body mass index (BMI) score between 36.54 and 39.61, (R. 20), there was no evidence in the record that Plaintiff's weight "increases the severity of his coexisting impairments to the extent that the combination of impairments either meets or medically equals the requirements of a Listing." R. 16.[4] The ALJ found that Mr. Mendez did not meet any Listing criteria, specifically rejecting

---

[3] The regulations contain a series of "listings" that describe symptomology related to various impairments. *See* 20 C.F.R. Pt. 404, Subpt. P., App. 1. If a claimant's documented symptoms meet or equal one of the impairments, "the claimant is conclusively presumed to be disabled." *Bowen v. Yuckert*, 482 U.S. 137, 141 (1987). If not, the sequential evaluation continues to step four, where the ALJ determines whether the impairments assessed at step two preclude the claimant from performing any relevant work the claimant may have performed in the past. *Id*.

[4] My review of the record revealed at least two dates upon which Mr. Mendez' weight/BMI were higher than 280 pounds and 39.61, respectively. On October 3, 2018, Mr. Mendez weighed 287 pounds with a corresponding BMI of 40.05, (R. 808), and on January 4, 2019, Mr. Mendez' weight was recorded at 291 pounds, with a BMI of 40.64. R. 804.

Section 1.02 of the Listings because Mr. Mendez' prior hip and leg fractures "do not result in inability to ambulate effectively," and rejecting Section 11.02 of the Listings, "because there is no indication in the record that seizures occur at the frequency set forth therein." *Id*. Mr. Mendez challenges only the ALJ's decision regarding obesity and does not address the ALJ's finding regarding Section 1.02 or Section 11.02 of the Listings.

Prior to undertaking his step four analysis, the ALJ assessed Mr. Mendez' residual functional capacity ("RFC") by stating that Mr. Mendez has the "capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except he requires a sit/stand option; he can only occasionally climb stairs, ramps, ladders, or scaffold[s]; and he is limited to occasional balancing, stooping, and kneeling with no exposure to unprotected heights and moving mechanical parts." R. 16.

At step four, the ALJ found that Mr. Mendez is unable to perform his past relevant work as a forklift truck operator and taxi driver. R. 24. Both jobs were classified by the impartial vocational expert (VE) as being semi-skilled (SVP 3) in nature and requiring medium exertion. R. 24-25. Because the RFC limits Mr. Mendez to light work, the ALJ found Mr. Mendez could not perform this past relevant work as actually or generally performed. R. 25. At step five, based on the RFC and testimony from a vocational expert, the ALJ determined that Mr. Mendez would be able to perform the requirements of representative occupations such as ticket taker (DOT Code 344.667-010) (unskilled SVP 2 in nature and light exertionally); cashier II (DOT Code 211.462-010) (unskilled SVP 2 in nature and light exertionally); and information clerk (DOT Code 237.367-018) (unskilled SVP 2 in nature and light exertionally). R. 25-26.  Because

these jobs exist in significant numbers in the national economy, the ALJ concluded that Mr. Mendez is not disabled. R. 26.

Mr. Mendez contends the ALJ made two errors in reaching his decision, and the case requires remand due to a separation of powers violation in the appointment of the Commissioner of Social Security. ECF Doc. No. 18 (Pl. Br.) at 3.[5] The errors Mr. Mendez alleges were made by the ALJ are (1) the ALJ failed to obtain pre-incarceration medical records when Mr. Mendez was on disability prior to his incarceration, and (2) the ALJ failed to articulate any consideration of Mr. Mendez' obesity as it affects his other severe impairments. *Id.* Mr. Mendez' third argument is that the case requires remand "because the appointment of Andrew Saul as a single Commissioner of Social Security who is removable only for cause and serves a longer term than the president violates separation of powers, rendering the decision in this case by an ALJ and Appeals Council judges, who derived their authority from Mr. Saul constitutionally defective." *Id.*[6]

The Commissioner responded initially to Plaintiff's first argument that the record contains sufficient evidence to uphold the ALJ's decision. ECF Doc. No. 23 (Com. Res.) at 1-12. The Commissioner further argued that the ALJ took all appropriate steps in considering the Plaintiff's obesity, and no remand is required on this issue. *Id.* at 13-14. Finally, the Commissioner argued that Plaintiff's separation of powers argument does not entitle Plaintiff to a remand, because Plaintiff cannot show a sufficient nexus between the removal restriction and the denial of the benefits claim, and any error was harmless. *Id.* at 15-24.

---

[5] Page numbers in pleadings filed on the Court's ECF system are those inserted by the Clerk of Court at the top of the page.
[6] Plaintiff states in his reply brief that, should he not prevail on his other arguments, he understands that relief has not been granted on this issue in any court to date, and he does not intend to press this argument on appeal. ECF Doc. No. 29 (Pl. Rep. Br.) at 6, n.4.

Plaintiff filed a short reply, reiterating that the ALJ's failure to obtain Plaintiff's pre-incarceration medical records and records regarding his earlier award of benefits requires a remand, as does the ALJ's failure to discuss Plaintiff's obesity at steps 4 and 5 of the sequential process. ECF Doc. No. 29 (Pl. Rep. Br.) at 1-6. I ordered the Commissioner to file a supplemental memorandum, advising me whether or not the Plaintiff did, in fact, receive Social Security disability payments prior to his incarceration, and if so, the type of payment received, the reason(s) any payments ceased, and whether or not the ALJ hearing Plaintiff's case received any medical records pre-dating Plaintiff's incarceration. ECF Doc. No. 30. The Commissioner filed a supplemental memorandum addressing those inquiries on August 31, 2023. ECF Doc. No. 31 (Com. Supp. Res.).

## STANDARDS OF REVIEW

My review of the ALJ's decision is deferential. I am bound by his findings of fact to the extent those findings are supported by substantial evidence in the record. *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000) (citing *Plummer v. Apfel*, 186 F.3d 422, 427 (3d Cir. 1999)). Accordingly, my review of the ALJ's findings of fact is limited to determining whether substantial evidence supports the ALJ's decision. *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999) (citing 42 U.S.C. § 405(g)). If the ALJ's decision is supported by substantial evidence, his disability determination must be upheld. *Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005); *see also* 42 U.S.C. § 405(g).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). Substantial

evidence "is more than a mere scintilla but may be less than a preponderance." *Brown v. Bowen*, 845 F.2d 1211, 1213 (3d Cir. 1988). I must rely on the record developed during the administrative proceedings along with the pleadings in making my determination. *See* 42 U.S.C. § 405(g). I may not weigh the evidence or substitute my own conclusions for those of the ALJ. *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 359 (3d Cir. 2011).

The ALJ's legal conclusions and application of legal principles are subject to plenary review. *See Krysztoforski v. Chater*, 55 F.3d 857, 858 (3d Cir. 1995). I must determine whether the ALJ applied the proper legal standards in reaching the decision. *See Coria v. Heckler*, 750 F.2d 245, 247 (3d Cir. 1984). Accordingly, I can overturn an ALJ's decision based on an incorrect application of a legal standard even where I find that the decision otherwise is supported by substantial evidence. *Payton v. Barnhart*, 416 F. Supp. 2d 385, 387 (E.D. Pa. 2006) (citing *Friedberg v. Schweiker*, 721 F.2d 445, 447 (3d Cir. 1983)).

## DISCUSSION

### A. The ALJ did not err by failing to obtain pre-incarceration medical records for Mr. Mendez.

Mr. Mendez argues that, although the ALJ obviously knew that Mendez received an earlier award of disability, was incarcerated, and lost his benefits at some time, the ALJ erred by not taking steps to obtain (1) the medical records that supported the earlier award of benefits; and (2) the documentation regarding the reason the benefits ceased.[7] Relying on the decision in *Wooten v. Astrue*, No. 11-CV-07592, 2012 WL 6601397 (E.D. Pa. Dec. 17, 2012), Mendez contends that the medical evidence supporting a prior valid

---

[7] During the hearing, the ALJ asked, "[w]hy did you lose your disability? . . . "That's when you ended up in jail, correct?" Mr. Mendez responded, "[r]ight." The ALJ then stated, "That's why you lost it." The Commissioner now suggests that this statement by the ALJ was incorrect. *See infra* at 8-9.

disability claim is relevant to a later claim, so that it may be determined if the Claimant's condition changed. *Id.* at *4.

The Commissioner did not address Mendez' prior award of benefits at all, nor cite to or address the holding in *Wooten*, arguing that any such evidence would be irrelevant, because the alleged onset date in the application for benefits was April 26, 2016, a date after Mr. Mendez was released from incarceration. Com. Res. at 1, 7. Plaintiff replied that the ALJ's failure to obtain the medical records used to determine disability prior to his incarceration meant that the ALJ failed to take the entire record into account. Pl. Rep. Br. at 1. I agree with the Plaintiff that, if he was receiving disability at the time he was incarcerated, and then lost his benefits only because of that incarceration, then his earlier medical records would be relevant to determine whether he continued, after incarceration, to suffer from impairments that preclude all work.

The Commissioner provided me with no answers to this question in her initial response, despite the Plaintiff's brief highlighting the ALJ's assertion at the hearing that Plaintiff "lost" his disability at the time of his incarceration and inferred that the incarceration itself was the reason for the benefits ceasing. I therefore requested supplemental briefing from the Commissioner to provide information with regard to Mr. Mendez' prior benefits. ECF Doc. No. 30.

The Commissioner advised that the record provided to the ALJ did not include medical evidence predating the "relevant period," that is, the April 26, 2016 date used on Mr. Mendez' current application for benefits. Com. Supp. Res. at 3. The Commissioner also provided additional information, which resolves the issue. *Id.* at 2. According to the Commissioner, Mr. Mendez originally filed for disability benefits on January 8, 2009, and began receiving Title II Disability Benefits, with an onset date of

October 1, 2007, and an entitlement date in March 2008. In September of 2015,
however, he received a notice that a disability determination hearing was scheduled for
September 15, 2015. The day after that hearing, Mr. Mendez was sent a notice that his
health had improved, he was now considered able to work, and his disability benefits
would end. *Id.*

      Almost exactly one year later, on September 8, 2016, Mr. Mendez was sent[8] a
notice "indicating that he was not due benefits for March and April 2016 due to his
incarceration." *Id*. The Commissioner then states, "[f]ollowing an alert received
regarding the previous disability cessation decision from September 2015 in December
2017, and (sic) Agency staff took action on April 2018 to terminate Plaintiff's benefits
retroactively to August 2014." *Id*. Mr. Mendez apparently was then sent a "disability
cessation and overpayment notice," on April 23, 2018. *Id*. Mr. Mendez' new application
for Title II benefits was filed two months later, on June 26, 2018, along with a Title XVI
application for supplemental security income, both of which listed April 26, 2016 as the
alleged date the disability began. *Id*.

      The Commissioner contends this timeline demonstrates that Plaintiff's first
challenge to the ALJ's decision should be dismissed, because although Mr. Mendez was
entitled to disability benefits beginning in March 2008, those benefits ceased in 2014
due to medical improvement, and Mr. Mendez received a notice to that effect, albeit in
2015, almost a year later. Additionally, the Commissioner notes that Mr. Mendez
received another notice in 2016, that he was not due benefits for just two months, March

---

[8] The Commissioner's brief states that "Plaintiff received a notice dated September 16 . . .," however, there
does not appear to be any proof in the record of receipt. I will therefore assume only that the notices
discussed were sent to Plaintiff, not when, or if, they were received.

and April of 2016, due to his incarceration. The Commissioner concludes, "[h]ence, Plaintiff's benefits ceased before he was incarcerated." *Id.*

It is no wonder Mr. Mendez is confused. Dissecting the Commissioner's response to my inquiry, it appears that Mr. Mendez received an award of benefits in 2009 that was discontinued in September of 2015 due to an improvement in his health. However, he apparently continued to receive benefits, as he was advised a year later (September of 2016) that he was not entitled to benefits for just two months of the prior year, March and April of 2016, because he was incarcerated. Two years after that, he was told he owed money back to the SSA.

Nevertheless, at the time of the July 17, 2019 hearing, Mr. Mendez could not argue that his benefits were discontinued solely because of his incarceration. In order to qualify for disability, a claimant must have a medically determinable impairment that can be expected to result in death, or that has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. §§ 423(d)(1)(A); *Barnhart v. Walton*, 535 U.S. 212, 217 (2002). An ALJ deciding whether or not a claimant has met this standard must fully develop the record, and "[a] developed record provides substantial evidence to support the ALJ's findings." *Wooten*, at \*3. "Substantial evidence" is defined by the Third Circuit as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Reefer v. Barnhart*, 326 F.3d 376, 379 (3d Cir. 2003) (citation omitted).

The inquiry, then, into whether or not the ALJ properly developed a record that contained substantial evidence to support his findings, would need to begin with an answer to the question of whether or not Mr. Mendez continued to suffer from an impairment that he suffered from in 2008, when he was determined to be disabled. As

10

the district court stated in *Wooten*, "[e]vidence supporting a valid prior disability claim is relevant to a later claim. How the claimant's condition changed, if at all, is relevant to assessing his current condition." *Id*. at *4. Plaintiff's entire argument in his first claim is based upon the assumption that the only reason that disability benefits ceased was due to Mr. Mendez' short incarceration. Pl. Br. at 4-14. Mr. Mendez notes that the record contains only a cryptic notation, which is in the form of a chart of "prior electronic filings" concerning his prior hearings, at R. 64 and 79, and "plaintiff is unable to tell the disposition(s) of this/these hearing(s)." Pl. Br. at 9.[9] Plaintiff's complete ignorance of the subsequent discontinuance of his benefits in September of 2015 is illustrated by his statement in his opening brief that, after attending a hearing in 2009, "[s]ince . . . he subsequently was getting disability[,] he presumably won." *Id*.

My review here is limited to determining whether the ALJ developed a full and complete record, and weighed all relevant, probative, and available evidence in coming to his decision. *See Dobrowolsky v. Califano*, 606 F.2d 403, 407 (3d Cir. 1979). Additionally, remand will be necessary if the ALJ failed to explain fully and clearly the basis for his decision. *Barren Creek Coal Co. v. Witmer*, 111 F.3d 352, 356 (3d Cir. 1997). Because it appears that an intervening event occurred—that is—Mr. Mendez' benefits were discontinued because his medical condition improved, meaning he was no longer entitled to disability benefits, the ALJ had no duty to review medical records that concerned the prior award of benefits.

---

[9] I note that one date on that chart, September 16, 2015, which is listed as the "determination or decision date" for "prior electronic filing" number 1, a "Reconsideration/DH" is a date contained in the Commissioner's timeline provided in the supplemental briefing. The Commissioner advises that September 16, 2015 is the date, "Plaintiff received a notice . . . after the hearing indicating that his health had improved, was able to work, and his disability benefits would end." The only other corresponding date contained in the chart and the Commissioner's timeline is the date Plaintiff originally filed for disability benefits (January 8, 2009). R. 64, 79.

Therefore, Mr. Mendez' first argument, that the ALJ should have reviewed his medical records from before his incarceration, fails. Mr. Mendez did not have an active award of benefits from SSA, under either Title II or Title XVI, at the time he was incarcerated. The ALJ did not need to review the earlier medical records, as was required in *Wooten*, because Plaintiff was not receiving disability benefits at the time his incarceration began. I will therefore decline to remand Mr. Mendez' case because the ALJ did not review his pre-incarceration medical records.

### B. The ALJ did not adequately analyze the cumulative effect of Mr. Mendez' obesity on his other impairments, but this error does not require remand.

Mr. Mendez contends that the ALJ did not discuss how his obesity affected Mr. Mendez' other severe impairments at steps four and five, necessitating remand. I agree that the ALJ's decision fails to contain a meaningful discussion of how, if at all, Mr. Mendez' obesity may, or may not, have affected his other severe impairments at steps four and five, and therefore lacks a discussion sufficient to enable meaningful judicial review. *Diaz v. Comm'r of Soc. Sec.*, 577 F.3d 500, 504 (3d Cir. 2009) (citing *Burnett v. Comm'r of Soc. Sec. Admin.*, 220 F.3d 112, 119 (3d Cir. 2000)). In *Diaz*, the Third Circuit found that merely citing to reports by doctors who were aware of Diaz' obesity was insufficient to demonstrate that the ALJ properly considered Diaz' obesity in relation to her joint dysfunction, making meaningful review impossible. *Id*. at 504. "The ALJ must provide a 'discussion of the evidence' and an 'explanation of reasoning' for his conclusion sufficient to enable meaningful judicial review." *Id*. at 504, citing *Burnett* at 120.

SSR 19-2, effective May 20, 2019, and therefore applicable to the ALJ's September 16, 2019 decision, states that "[t]he combined effects of obesity with another impairment(s) may be greater than the effects of each of the impairments considered separately." SSR 19-2P, Titles II & XVI: Evaluating Cases Involving Obesity, at *4 (May 20, 2019). In discussing when obesity is a severe impairment, the SSR states in part: "[i]f the person's obesity, alone or in combination with another impairment(s), significantly limits his or her physical or mental ability to do basic work activities, we find that the impairment(s) is severe." *Id.*

At step two, the ALJ listed obesity as one of several severe impairments suffered by Mr. Mendez. R. 15. At step three, when finding that none of Mr. Mendez' severe impairments meets or medically equals the severity of a Listing, the ALJ specifically stated that in his review of the record, he found "no indication . . . that the claimant's obesity increases the severity of his coexisting impairments to the extent that the combination of" obesity with another impairment meets or equals a Listing. R. 16. Also at step three, the ALJ found that Mr. Mendez' seizure disorder does not meet the requirements of Section 11.02 of the Listings because they are too infrequent. *Id.* Finally, at step three, the ALJ found Mr. Mendez did not meet the requirements of Section 1.02 of the Listings, because his status post right hip fracture and fixation and status post fracture of both legs with fixation are essentially healed, and they do not result in any inability to ambulate effectively. *Id.*

The ALJ discussed in great detail Mr. Mendez' testimony, including his weight, the fact that he has recently gained weight, and Mendez' reports of numerous areas of pain, for example in his knee and his right hip. R. 17. Although Mr. Mendez told the ALJ he has considerable pain in various parts of his body, he stated that he only takes

Naproxen or Tylenol for pain, does not use a TENS or a brace, and although he did attend physical therapy at one point, he no longer does so. R. 17-18. In addition to Naproxen, Mr. Mendez takes Seroquel, as a sleep aid, and Zoloft, for anxiety. R. 18. Although the ALJ acknowledged that Mr. Mendez has medically determinable impairments, he found that Mr. Mendez' reported limitations were inconsistent with the "relatively benign clinical and laboratory signs and findings and the limited degree of recent treatment required." R. 19.

The ALJ then thoroughly discussed all of the medical records in the file, noting that all of Mr. Mendez' examinations resulted in findings of no acute distress, no swelling, no limitation in range of motion, no problems walking, sitting, standing, dressing, or balancing. R. 19-21. Additionally, Mr. Mendez repeatedly failed to attend follow-up appointments with doctors, failed to get ordered blood work, and did not seek physical therapy, joint injections, or any other treatment to assist with his reported pain. R. 20-21. The consultative mental and physical examinations revealed no serious issues on either front. R. 21. The physical examination with Ahmed Kneifati, M.D. revealed that while he complained of pain in the right hip and leg and both knees, he showed no acute distress, had a normal gait, was able to stand on toes and heels and walk on toes and heels, had a normal stance, used no assistive devices, needed no help changing for the examination or getting on and off the examination table. *Id*. He rose from the chair without difficulty, had no joint deformity, his joints were stable, his strength was 5/5 in the upper and lower extremities, he exhibited no muscle atrophy, had normal hand and finger dexterity, exhibited no redness, heat, or effusion and no trigger points, and his deep tendon reflexes were physiologic and equal in the upper and lower extremities. His grip strength was normal in both hands. *Id*. The doctor noted only "medial tenderness of

14

both knees and lateral right hip," and he reported that Mr. Mendez said his pain level is "9/10." *Id.*

Despite claiming this high level of pain on November 14, 2018, during a visit to his family doctor less than two months later, on January 4, 2019, he reported that he was taking Naproxen "only sparingly." R. 21, 803. In April 2019 he was "negative for back pain and difficulty walking," and he was not nervous or anxious. R. 22, 800. He again exhibited normal range of motion. *Id.*

Mr. Mendez sought a doctor's assistance in May 2019 with paperwork that would document that his seizure disorder precluded employment. R. 22, 821. The doctor noted that Mr. Mendez had failed to complete bloodwork to check his Tegretol level, and did not follow up with Dr. Pacelli[10] for an MRI or EEG. R. 821. A follow up with Dr. Pacelli regarding his seizure disorder in June 2019 noted that Mr. Mendez was doing well, "may have had a brief nocturnal spell, and all of his spells tend to be nocturnal when they do occur." R. 826. The ALJ concluded that based upon the medical records, the longitudinal medical evidence shows that Mr. Mendez' seizures are "rather well controlled." R. 20.

Likewise, it was the ALJ's conclusion that Mr. Mendez' fractures have healed, and while he has some residual pain, it is not severe, "as he is only taking Naproxen for pain." R. 22. Mr. Mendez has offered me no argument to rebut these findings, nor does he even suggest in what way Mr. Mendez' weight may, in combination with healed fractures, residual pain, or seizures, affect his ability to maintain employment.

---

[10] Dr. James Pacelli is listed on Penn Highlands Healthcare's website as a specialist in Neurology. https://www.phhealthcare.org/doctor/pacelli-james-md-1029 (visited October 30, 2023).

Judge Kearney faced a similar record in *McPherson v. Colvin*, No. 16-CV-1469, 2016 WL 5404471 (Sept. 28, 2016). The ALJ found that claimant Charlene McPherson suffered from severe impairments of obesity, depression, migraines, and disorders relating to her knee and ankles. *Id.* at *1. The ALJ failed to analyze the cumulative effect of McPherson's obesity on her other severe impairments at steps four and five, however, Judge Kearney noted that the claimant failed to identify evidence showing the result would change on remand—that is, she pointed to no evidence to suggest that her obesity did, indeed, exacerbate any other severe impairment such that it interfered with her ability to work. *Id.* at *6. For instance, Ms. McPherson testified that her obesity exacerbated her knee and back pain. *Id.* But the ALJ noted that her statements regarding the intensity, persistence and limiting effects of her symptoms were not credible because they were internally inconsistent and were inconsistent with the record. *Id.*

Conversely, in *Jainlett v. Colvin*, No. ECF Doc. No. 17, at 4 (E.D. Pa. June 30, 2016) *approved and adopted*, ECF Doc. No. 19 (E.D. Pa. July 15, 2016), I recommended remand where the claimant suffered from diabetes mellitus, mild right foot arthritis, right leg pain, and a spinal disorder, but the ALJ did no more than note that all of her conditions, including her obesity "reasonably impose limitations on her ability to work[,]" a statement I found insufficient for meaningful review. ECF Doc. No. 17 at 7. I stated,

> The ALJ found Jainlett to be capable of light work, which would require Jainlett to stand for six hours per day. The ALJ also found that in addition to obesity, Jainlett had diabetes mellitus, mild right foot arthritis, right leg pain, and a spinal disorder. R. 16. Each of these conditions "would seem to have [been] exacerbated [by obesity] . . . As a matter of common sense, if not medical diagnosis." *Diaz*, 577 F.3d at 504 (citing *Clifford v. Apfel,* 227 F.3d 863, 873 (3d Cir. 2000)). The ALJ's

failure to provide a more complete discussion of his analysis of Jainlett's serious impairment of obesity both alone and in conjunction with her other impairments, is error.

*Id.*

This case is different. Mr. Mendez' treating physicians and the consulting examiner were aware that Mr. Mendez' BMI was well over 30, meaning that he suffers from obesity. Yet all of his doctors noted at virtually every examination that Mr. Mendez exhibited no acute distress, no swelling, no limitation in range of motion, no problems walking, sitting, standing, dressing, or balancing. He does not use a cane or other assistive device. He only sparingly uses Naproxen for pain. Mr. Mendez' seizures are well-controlled, and there is no evidence in the record that they are affected in any way by his obesity. An October 2018 test for diabetes was negative. R. 823. While the ALJ did not specifically discuss Mr. Mendez' obesity after step three, he did discuss the complete lack of medical evidence demonstrating limitations in Mr. Mendez' ability to function. He concluded:

> It is noted that while he has a history of having sustained fractures, they have healed. While he has some residual pain, it is not (sic) seem to be much, as he is only taking Naproxen for pain. Although he has seizures, they do not occur at an overwhelming level, as the record shows that seizures are far apart, and he has not been back to the neurologist recently. When he has returned to the neurologist, he reported seizures, but any such "spells" occur at night. Beginning in September 2018, he has returned to work as a delivery driver and is work (sic) twenty hours a week, which supports the residual functional capacity for light work.
> As for the effectiveness of treatment, it is reasonable to conclude that treatment is effective in light of the fact that no alternative treatment has been recommended or sought.

R. 22.

Mr. Mendez' brief does not point me to any evidence in the record to support his claim that his obesity, in combination with one or more other impairments, impedes his ability to work. My independent review of the record does not reveal any, either. "[T]he Court cannot remand the ALJ's decision based on the failure to confront evidence that does not exist." *Neff v. Astrue*, 875 F.Supp.2d 411, 423 (D. De. Jul. 13, 2012). The Third Circuit has recently reiterated in a non-precedential decision that a failure to specify *how* a claimant's obesity affected his ability to perform basic work activities will doom his claim. *Carter v. Comm'r. of Soc. Sec.*, 805 Fed. App'x. 140, 143 (3d Cir. 2020). Because Mr. Mendez has failed to identify evidence which would have changed the ALJ's findings with regard to his obesity, remand is not warranted on this issue.

### C. Any error in the appointment of Commissioner Saul does not require remand.

Plaintiff claims that Commissioner Andrew Saul's appointment violated the Constitution, and that as a result the ALJ and Appeals Council Judges who decided this case lacked the power to do so. Pl. Br. at 18-21. Because Mr. Mendez is not entitled to relief as a result of the Constitutional flaw he identifies in Commissioner Andrew Saul's appointment, I will deny his claim.

Plaintiff argues that the Social Security Act provision that limits the President's authority to remove the Presidentially appointed, Senate-confirmed Commissioner of Social Security without good cause, 42 U.S.C. § 902(a)(3), violates the Constitutional requirement of separation of powers. Pl. Br. 18. The Commissioner agrees that 42 U.S.C. § 902(a)(3) violates the separation of powers to the extent it is construed as limiting the President's authority to remove the Commissioner without cause. *See* Office of Legal Counsel, U.S. Dep't. of Justice, Constitutionality of the Commissioner of Social

Security's Tenure Protection, 2021 WL 2981542 (July 8, 2021) ("OLC Op.") (Cited at

Com. Res. 15).

      The Supreme Court teaches that even where a statutory removal provision exists

that unconstitutionally restricts the President's discretion to remove an officer, a

plaintiff complaining of the removal provision must demonstrate that the provision

inflicted "compensable harm." *Collins v. Yellen*, 141 S. Ct. 1761, 1789 (2021).

Courts that have looked at this issue have concluded that a plaintiff in Mr. Mendez'

position cannot show a nexus between the removal clause and the adverse decision by

an ALJ. *See West v. Saul*, Civ. No. 20-cv-5649, 2022 WL 16781547, at *16–17 (E.D. Pa.

2022) (Judge Sitarski) (collecting cases). This is not the same situation presented by an

appointment clause problem. When an official takes office under an appointment that is

Constitutionally defective, any act he takes is beyond his power and void. A removal

clause defect presents a much more limited problem. Until there is evidence that the

President wants to remove the official but cannot because of the statutory limitation on

his power to do so, there is no judiciable harm presented. Even then, a plaintiff must

show that the agency action would not have been taken but for the President's inability

to remove the officer. *Consumer Financial Protection Bureau v. National Collegiate*

*Master Student Loan Trust*, 575 F.Supp.3d 505, 508 (D. Del. 2021) (Bibas, J.); *Collins v.*

*Department of the Treasury*, ___ F.4th ___, 2023 WL 6630307, at *7 (5th Cir. October 12,

2023) (plaintiff must show that the President would have reversed agency action but for

his inability to remove the agency head); *Consumer Financial Protection Bureau v. Law*

*Offices of Crystal Moroney, P.C.*, 63 F.4th 174, 180 (2d Cir. 2023) ("to void an agency

action due to an unconstitutional removal protection, a party must show that the agency

action would not have been taken *but for* the President's inability to remove the agency head.").

Here, there has been no showing that the President would have ordered different agency action but for his inability to fire the Commissioner. Mr. Mendez has not met his considerable burden to demonstrate a nexus between the unconstitutional removal statute and the agency action he complains of.

I am satisfied that the ALJ properly considered the evidence when determining Mr. Mendez' claim. He thoroughly reviewed the medical record and the opinions, considered the evidence from various health care providers, considered the testimony and other evidence of record, and explained his reasons for his findings, which accounted for Mr. Mendez' impairments. R. 21-22. Additionally, the ALJ discussed the assessments in the record, advising where he accepted or rejected the findings of those physicians. R. 23-24. The ALJ constructed an appropriate residual functional capacity finding, based upon Mr. Mendez' severe conditions, and obtained appropriate testimony from a qualified vocational expert that sufficient jobs exist in the national economy that Mr. Mendez can perform, given his limitations. There was no error requiring remand.

## CONCLUSION

Because I find no error, I will affirm the decision of the ALJ and dismiss the appeal. I will enter an Order and Judgment accordingly.

**BY THE COURT:**

***s/ Richard A. Lloret***
**RICHARD A. LLORET**
**UNITED STATES MAGISTRATE JUDGE**